May it please the Court, Rich Busse, for the plaintiff, Michelle Livingston. Perception and intent ordinarily jury questions. Particularly so, whereas here there's a question of fact as to whether or not Ms. Livingston was retaliated against for requesting accommodation as evidenced by defendant imposing the requirement that she work to a time when she would be facing oncoming headlights at night, knowing that her doctor had just told her that it would be dangerous for her to do so. And a reasonable jury could find that was retaliatory when it knew that she had driven to work that day, knew that her doctor had told her that, instead of communicating its position to her as it had done before and giving her time to consult with a doctor, a lawyer, or to arrange for alternative transportation in days to come. And as evidenced by Mr. Catalano's statement earlier that day with respect to her doctor's note, the sooner you give it to me, the quicker we can get this over with. And Mr. Edgerly's statement about Mr. Catalano's having accommodated her the previous year, shame on him. And she was entitled not to be retaliated against whether or not she was disabled. But there is a question of fact as to whether or not she was substantially limited in a major life activity, at least of seeing in her night blindness with oncoming headlights at night. She couldn't tell because of her impaired depth perception, whether they were on the right or left. She couldn't walk unassisted at night because she couldn't tell where the pavement ended. Defendant's position that it didn't have to accommodate her because she was not a driver is too narrow. And that position has been rejected by this and other courts in cases like Humphrey. Just as a leave of absence to allow a person to return to work to perform the essential functions of their position is reasonable, so too a modified work schedule to allow them to come to work earlier or later is just as reasonable. Now, even if she was not actually disabled, there is a question of fact as to whether or not she was regarded as disabled. Counsel raised in its reply brief below that that theory was not contained in the administrative or court complaint. But what was in the complaint was an allegation that she suffered from night blindness and she was discriminated against on the basis of that disability. And an individual with a disability is defined under both federal and state law to include persons who are regarded as disabled. And the law is too complex to require a person to guess in advance what a court and jury is going to determine to require them to plead anything more than their disability and that they were discriminated against as a result of that disability. And if the defendant wanted more information, it could have moved to make more definite and certain. It did not. And there is also a question of fact as to whether or not her night blindness was perceived to be substantially limiting given its having accommodated her the previous year. There is also a question of fact as to whether or not she was terminated because of her disability or for having requested accommodation as evidenced by Mr. Catalano's this being such a hot potato issue that Mr. Catalano denied knowledge of her accommodation the previous year even though he was the one who granted it. Of Mr. Edgerly's scoring for him in his statement. Shame on him. And the fact that she said, I can't work until 6, a reasonable jury could conclude that's not a legitimate basis for her termination. Rather, to impose that requirement knowing it probably would not be accepted given the fact of what her doctor had just told her about the danger of doing so was simply to manufacture a reason that would be a pretext for her termination. Finally, there was a question of fact as to whether or not the defendant had engaged in the interactive process in good faith given Mr. Catalano's statement earlier that day. The quicker you give it to me, the faster we can get this over with. And also, the lawyer's instant analysis over the phone that she was not entitled to accommodation because she was a driver. When that person in her deposition also testified that there may be some disabilities that require a person not to be able to get to work on time, and to determine whether or not they would be entitled to a modified work schedule would require a case-by-case analysis where a reasonable jury could conclude that Ms. Livingston was not given a case-by-case consideration because of the focus on whether or not she was a driver. Thank you. I'd like to reserve the rest of my time for rebuttal. Thank you. May it please the Court. David Wilson on behalf of Defendant Fred Meyer. To show a disability, the plaintiff needs to start by showing an impairment and then show that that impairment substantially limited her in a major life activity. The plaintiff has not even shown an impairment. She has produced letters from her doctor which say that she is ‑‑ has difficulty seeing when headlights are coming at her in low light. But finding it difficult to drive is not an impairment. Many people have difficulty driving, even in daylight. We face many challenges in this society. Operating a computer is very challenging for some people. And the fact that they can't do it or think they can't do it is not evidence that they have an impairment. The plaintiff's ‑‑ the cases that she relies on are cases where people have diagnosed impairments. The Capo Bianco case from New York, the plaintiff in that case had congenital stationary night blindness, which is ‑‑ the technical name is night topolia, night tilapia, excuse me. It's a disease that you have from birth. It has a drastic impact on the amount of light that your eyes need to register. The plaintiff in that case needed a hundred times more light than the average person in order to see and had many consequences affecting his life. The plaintiff here has not been diagnosed with any condition. The plaintiff in the other case that she cited in her letter of recent authority, Colwell v. Rite Aid, the plaintiff in that case had retinal vein occlusion and glaucoma and became blind in one eye. This plaintiff has none of those or any other impairment. She thinks that she has a hard time driving at night. It's difficult for her. That's not an impairment. Well, isn't that a question of fact? It would be if she submitted evidence that she had an impairment that would allow a jury to infer that she had an impairment. But there is ‑‑ there's nothing from her doctor. There's ‑‑ no disease has been named. No condition has been named that is viewed as an impairment. Has the ADA ‑‑ Before, she worked a shift that worked out for her. She started early in the morning, and because it gets dark early here in the northern latitudes, she got off early at night and she worked satisfactorily for a year under that accommodation. Did she not? She asked her supervisor in 2005 if she could stop working early so she wouldn't have to drive home in darkness, and that supervisor said okay. Well, that's an accommodation. The supervisor agreed to her request. The supervisor had no responsibility for implementing or applying the ADA. She told him why. Pardon? She told him about her problem driving at night, you know, with the lights coming at her. Right. He was ‑‑ I forgot his job title, but there's a specific person in the store, the human resources person who deals with accommodations and knows the legal requirements. She was never involved. He just said okay. And for that year, she was permitted to leave early, although she, as I'll come to in a minute, she did, in fact, work up till 5 and 6 o'clock frequently. But ‑‑ Well, it depends on what time of year. Well, this is correct. I'm talking about October through January during the dark months. So, yes, the supervisor said fine. Well, that supervisor was gone the next year, and it's undisputed that actually wine stewards in Fred Meyer stores are always required to work till 6 o'clock. The last two to three hours is the key selling time, and it's especially key in October, November, and December, which is when they get the most revenue, it's the richest selling time of the year. And it's universal requirement. She should not have been allowed, although she was, in 2005 to leave early. But didn't, in fact, didn't the store increase its profits during the period when she left early? You may be correct, but we don't know how much more they would have increased had she been there. And now, the next thing I'd like to emphasize is that during that 2005, she regularly drove home and to work in low light and in darkness. In the reply brief, the plaintiff says that her only problem is driving in darkness, and our bar chart, which is Exhibit A to our brief, deals with the period from sunset to sunrise, and it's not dark that entire period. But the fact is that both of her doctor's letters say low light, and they say when there are headlights. Well, headlights go on by law at sunset. So our bar chart follows precisely the limitations that her doctor identified, and the chart shows that actually 47% of her driving in 2005 was after sunset and before sunrise. A number of those days, she was driving. It was pitch black for the whole time she was driving. Aren't these all jury questions? I don't believe it is, Your Honor. I don't think it's a jury question whether a person who drives, who drove 47% of the time in low light and darkness, it's not a jury question whether the person can drive in low light and darkness. The underlying assumption, that's your evidence that she was driving at night. The other side disputes that your evidence actually shows that. Isn't that a factual question? There's no contrary evidence. Those times are the times she entered. You admit that you're using the actual time of sunset, right? Did you say that, that your chart uses the actual time of sunset? That's correct. Okay, well, from your personal observation, have you ever noticed that even after the actual time of sunset, it can be light outside? It can be, yeah. We've noticed here, right from California. It can be twilight, yeah. We've noticed how really light it's been all the way up to 9 o'clock here. Well, her doctor said that she, her limitation goes into effect when the light is low. Right, and so I guess I'm just suggesting that you've got some evidence and they've got some evidence and I mean, I don't think it's up to us to decide whose evidence is correct. Your Honor. And it's not up to the district court either. On October 31, 2005, plaintiff left work at 5.43 a.m., more than an hour before sunrise. That's undisputed. On October 31, 2005, she arrived at work at 11.45 p.m. That's undisputed. On November 8, she left work at 6 o'clock p.m., more than an hour after sunset. On December 1, she arrived at work at 2.53 a.m., long before sunrise. Her entire drive, either to or from work, was in complete darkness. On December 16, December 23, 24, 27, 28, 29, 30, 31, and January 2. Those are all undisputed. We have the times that she arrived and the times that she departed. So she admitted in her deposition that once each month, she leaves home at either 2 or 3 a.m. to come to work and drive to work. So we have over 30 times she's driven to work undisputedly in complete darkness. There's no jury question about whether she can drive in the dark. She has done it. Well, her problem was with the headlights coming at her. That's her problem. Correct. People have that problem. Correct. I have the problem. It's hard, especially with these new headlights. And she drove with headlights on all of these days. Maybe at the 2 a.m. one, there weren't that many headlights. But most of these December times, she's leaving home at around 5 or 6 a.m. So she could drive in the darkness. She did drive in darkness. She did drive in low light. That's undisputed. Well, sometimes you do it, you take a chance. Not a good idea. In addition, she had public transportation available to her. The day that she was told that she was discharged after refusing to work her assigned shift on October 9, I believe it was, 2006, she had been working until 6 o'clock. Prior to then, she left early and was told that's not proper. You need to work until the end of your shift. She, on December 9, I believe, excuse me, October 9, she was told, she said I need to leave early and she was told you have to work to the end of your shift. And she was then told if you do that, that's insubordination and your job will be terminated. That's exactly what the form that she signed says as well. Insubordination results in termination. She knew the consequences. She chose to leave early. She could have worked until the end of her job. Nobody argues, well, it's not contendable that she couldn't finish working. The plaintiff's argument is that if she had finished working, then it would have been harder to get home. And as I think the record is quite clear, she can drive at night. She left work at 6 o'clock on November, excuse me, October 8, the year before, which was the same time she would have had to leave in 2006. Leave work at 6 o'clock, drive home. I think we get the thrust here already. Okay. So the plaintiff has not shown that she has an impairment. She has not shown that her eye condition substantially limits her in seeing. Her vision is excellent virtually all the time during the day, virtually all the time at night, only when she's facing headlights does she have a problem. Her testimony about walking again is, and I see my time is up, but her testimony about walking is on ER 39, and again, it's based on headlights facing her, which is just a narrow portion of the time that a person has to walk. Thank you very much. It's not that she thinks she can't do it. A doctor said it would be dangerous for her to do it. If there was some problem with the doctor's report, make her get another doctor's report. At the time, they say they didn't doubt her medical need for the accommodation. Now we hear we can't allow this because we need her there at this time when there's no dispute she did a fabulous job. With respect to the bar chart, that was prepared for litigation purposes. It was something that shows that she drove up to 30 minutes before sunrise or after the official sunset. It was taking a snapshot of time during the period of her accommodation the previous year. It says nothing about the dangers present if she were required to work not until 4 but until 6 when they wanted her to work, when she would not be assisted by ambient light, when she would be made to work in pitch black. And it is undisputed that the reason that she came in at the wee hours of the morning between 2 and 3 was so that she wouldn't be facing oncoming headlines. Thank you very much. Was age a factor at all in her problem with night driving? No, Your Honor. Thank you. This matter is concluded and submitted. And the next case was disposed of. And now we come to the next case being U.S. v. Al-Raji Banking and Investment Court. Now we come to the United States v. Galvano Marcelino Garcia.
judges: Goodwin, Pregerson, Wardlaw